IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| THEODORE HALKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:08-CV-00664 |
| | ) | (GBL/JFA) |
| | ) | |
| WORCH ELECTRIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT WORCH ELECTRIC, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant, Worch Electric, Inc. ("Worch Electric"or "Defendant"), by counsel, submits this Brief in support of its Motion for Summary Judgment.

## I.   PRELIMINARY STATEMENT

This is an employment discrimination action in which the plaintiff, Theodore Halkett ("Plaintiff" or "Mr. Halkett"), alleges that he was fired from his employment as an electrician with Worch Electric (which employed Mr. Halkett for fewer than two days in August 2006) in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. (the "ADA"), and that he is entitled to over $350,000.00 in damages and attorneys' fees. As described in further detail below, Worch Electric is entitled to summary judgment in its favor because on the undisputed material facts, and on Mr. Halkett's own allegations taken as true for purposes of this motion only, Mr. Halkett, as a matter of law, cannot establish at least one essential element of his claims against Worch Electric, including that he was qualified to perform an essential function of

his job, or that he was not provided with a reasonable accommodation for his work, despite a proper request.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On August 25, 2006, Worch Electric sent a manpower request to Local 26 for one 'A' Journeyman electrician to work on the Quantico Bachelor Enlisted Quarters (the "Project"), for approximately three (3) months. Affidavit of Christian Worch, sworn to January 27, 2009, at ¶3. (Hereinafter referred to as "Worch Aff.")  (Copy attached hereto as Exhibit "A.")

2.      In response to the manpower request, Mr. Theodore Halkett (Mr. Halkett") was employed by Worch Electric to work on the construction of the Project, as an electrician. Worch Aff., at ¶4 (Exhibit "A" hereto).

3.      Since this was a new construction project at a government facility, the primary electrical job was to run and bend conduit (for electrical and communications systems), including three-quarter inch (3/4") diameter conduit, and part of Mr. Halkett's job duties in the Project included the bending of that three-quarter inch (3/4") diameter conduit.  Worch Aff., at ¶5 (Exhibit "A" hereto).

4.      Most if not all government work is specified to be run with conduit instead of metal clad cable. Worch Aff., at ¶6 (Exhibit "A" hereto).

5.      Metal clad cable is flexible metal conduit with a wire bundle packaged inside. Worch Aff., at ¶7 (Exhibit "A" hereto).

6.      Government projects typically require conduit, because conduit is an open raceway that facilitates ease in maintenance and in future expansion. Worch Aff., at ¶8 (Exhibit "A" hereto).

7.     The use of metal clad cable is prohibited for some government jobs, and was prohibited from use on the Project, where Mr. Halkett was to be working as an electrician. Worch Aff., at ¶9 (Exhibit "A" hereto).

8.     On new construction jobs such as the Project, the conduit is installed as the walls and floors are being installed. This part of the work must be done prior to any wire being pulled and installation of devices, fixtures, etc. Worch Aff., at ¶10 (Exhibit "A" hereto).

9.     Conduit installation typically accounts for approximately fifty percent (50%) of the electrical portion of a project, if not more. Worch Aff., at ¶11 (Exhibit "A" hereto).

10.     The conduit work must be completed before all other facets of the project can begin installation. Worch Aff., at ¶12 (Exhibit "A" hereto).

11.     The Project required installation of the overhead light fixtures that weighed between thirty (30) and fifty (50) pounds, and part of the job duties of electricians on the Project, including Mr. Halkett, was the installation of those fixtures, which would have involved lifting them and installing them overhead. Worch Aff., at ¶¶ 13-15 (Exhibit "A" hereto).

12.     Because the Project was new construction at a government facility, the primary job for electricians was to run and bend conduit (for electrical and communications systems), including three-quarter inch (3/4") diameter conduit. Affidavit of Rick Dawson, sworn to January 27, 2009, at ¶6. (Hereinafter referred to as "Dawson Aff.") (Copy attached hereto as Exhibit "B.")

13.     The Project also required electricians on the job to perform tasks that required bending, kneeling, working in confined spaces, working overhead, and lifting heavy objects. Dawson Aff., at ¶7 (Exhibit "B" hereto).

14.     On August 29, 2006, Mr. Halkett reported for duty on the Project, as an electrician. Mr. Halkett reported late for work on August 29, 2006, but was paid for a full day of work. Dawson Aff., at ¶8 (Exhibit "B" hereto).

15.     On August 29, 2006, Mr. Halkett was paired with Chris Evans ("Mr. Evans"), another electrician on the job, so that Mr. Evans could show him how the rooms were to be roughed-in (i.e., the procedure for installing the conduits and boxes in the rooms). Dawson Aff., at ¶9 (Exhibit "B" hereto).

16.     On August 30, 2006, Mr. Halkett was expected to work independently like all of the other Journeymen, because production was an issue on the job. The primary required job function for August 30, 2006 was running and bending three-quarter inch (3/4") diameter conduit. Dawson Aff., at ¶10 (Exhibit "B" hereto).

17.     After a few hours, Mr. Halkett told Mr. Dawson, the Worch Electric foreman on the Project that he had seventy-eight percent (78%) disability in his arms and that he could not bend three-quarter inch (3/4") diameter conduit. Mr. Halkett then voluntarily quit the Project. Dawson Aff., at ¶¶ 5, 11 (Exhibit "B" hereto).

18.     Mr. Dawson kept daily logs of the work performed at the Project, as well as reported anything of importance that occurred at the Project for that particular day. Dawson Aff., at ¶12 (Exhibit "B" hereto).

19.     The statements Mr. Halkett made to Mr. Dawson on August 30, 2006, were recorded in his daily log for August 30, 2006. Dawson Aff., at ¶¶ 13-14 (Exhibit "B" hereto).

20.     At the time he quit, Mr. Halkett had worked for a total of thirteen (13) hours. Dawson Aff., at ¶15 (Exhibit "B" hereto).

4

21.     Mr. Dawson wrote on the slip "unable to bend conduit due to disability," at the instruction of the Local 26 business agent. Dawson Aff., at ¶16 (Exhibit "B" hereto).

22.     Mr. Halkett never told Mr. Dawson that he could bend conduit with the assistance of a machine (an electrically powered mechanized conduit bender, hereafter referred to as a "pipe-bending machine"). Mr. Halkett simply told Mr. Dawson that he could not bend the conduit. Dawson Aff., at ¶17 (Exhibit "B" hereto).

23.     Mr. Halkett never requested a pipe-bending machine to assist him in bending the three-quarter inch (3/4") diameter conduit at the Project. Dawson Aff., at ¶18 (Exhibit "B" hereto).

24.     It was standard in the trade as an electrician in August 2006, to use a hand bender for conduit that was 1-inch (1") diameter or less. Dawson Aff., at ¶19 (Exhibit "B" hereto).

25.     Mr. Dawson had never worked at a worksite where pipe-bending machines were provided to bend three-quarter inch (3/4") diameter conduit. Dawson Aff., at ¶20 (Exhibit "B" hereto).

26.     Pipe-bending machines are ordinarily used only to bend one and one half inch (1-1/2") diameter conduit and greater. Dawson Aff., at ¶21 (Exhibit "B" hereto).

### III.     ADDITIONAL MATERIAL FACTS FROM PLAINTIFF'S THIRD AMENDED COMPLAINT, AND PLAINTIFF'S DEPOSITION, TAKEN AS TRUE FOR PURPOSES OF THIS MOTION ONLY

1.     **Prior to commencing work at Defendant Worch Electric**, Mr. Halkett, who is right-hand dominate [sic], was diagnosed with and treated for a number of physical injuries and ailments which constitute a disability or disabilities (e.g., right shoulder, torn right rotator cuff; right bicep tendon rupture; locking of fingers on left hand, left wrist fracture, pain and clicking in left elbow; left knee, degenerative disc disease in back), many of which are permanent, that can

and did substantially limit one or more major life activities. Such substantially limited major life activities include, but are not limited to, the following: must avoid sleeping on ride [sic] side because of pain and discomfort; must avoid jumping because of sharp pains in lower back and leg(s); **can only stand for one hour or so, then must sit, walk or lean for awhile; bending and stooping are difficult so devices are used to pick up items off the ground; kneeling is difficult and can be done for short periods of time; walking is challenging because of the need to avoid stepping on objects**; eating with left hand and arm is difficult and awkward; doing household chores is difficult and slow because they often must be done with the left hand and arm, because of pain in the right hand and arm; brushing teeth with left hand rather than right hand makes oral hygiene difficult; bathing with left hand rather than right makes personal hygiene difficult; must support lower back during sexual relations; **inability and/or difficulty bending conduit while at work, etc.** These disabilities and many of the substantially limited major life activities mentioned above made it and make it difficult for Plaintiff to work (and/or made and make him unable to work) in other construction job classifications, and/or to work in other manual job classifications. Third Amended Complaint (hereafter "Complaint) at ¶8 (Emphasis added). (Copy attached hereto as Exhibit "C.")

2.     On August 30, 2006, Defendant requested that Mr. Halkett do electrical work, including but not limited to, the bending of conduits. Plaintiff, due to his disability or disabilities, was not able to bend conduit. Complaint at ¶10 (Exhibit "C" hereto).

3.     Mr. Halkett could not do much overhead work. See Halkett Dep., at pp. 61-62 (Exhibit "D" hereto).

4.     Mr. Halkett could not completely bend down. See Halkett Dep., at p. 36 (Exhibit "D" hereto).

5.     Mr. Halkett could not do a lot of bending and stooping. <u>See</u> Halkett Dep., at pp. 78 and 82-83 (Exhibit "D" hereto).

6.     Mr. Halkett could not lift items of certain weights above his head for overhead work duties. <u>See</u> Halkett Dep., at pp. 61-63 and 68-70 (Exhibit "D" hereto).

7.     Mr. Halkett could not lift a 2-x-4 lay-in light fixture over his head due to its weight and size. <u>Id.</u>

8.     Mr. Halkett sustained a ruptured right bicep tendon in August 2000.  As a result of this injury, he had no strength to pull objects toward is shoulder using his right bicep. <u>See</u> Halkett Dep., at pp. 68-70 and 78 (Exhibit "D" hereto).

9.     When Mr. Halkett went to a jobsite, he had to pick and choose what job functions he could perform based upon the weight of the materials, the size of the materials, the amount of pressure he must put on his shoulder, the need for certain overhead work, or certain other general working conditions. <u>See</u> Halkett Dep., at pp. 73-76 (Exhibit "D" hereto).

10.     Mr. Halkett's August 2000 shoulder injury restricted by the amount of weight he can lift on the job and the amount of pressure he could exert. <u>See</u> Halkett Dep., at p. 74-76 and 78 (Exhibit "D" hereto).

11.     Mr. Halkett's 1997 back injury restricted his range of motion and ability to bend on the job. <u>See</u> Halkett Dep., at pp. 82-85 (Exhibit "D" hereto).

12.     When asked to list job assignments where Mr. Halkett requested a machine to bend conduit, he did not list Worch Electric. <u>See</u> Halkett Dep., at pp. 53-56 (Exhibit "D" hereto).

13.     While working on the Project, Mr. Halkett asked another worker, Mr. Evans, to bend conduit for him.  Mr. Evans refused to bend the conduit.  See Halkett Dep., at pp. 111-112 (Exhibit "D" hereto).

## IV.   ARGUMENT

### A.   The Standard for Granting Summary Judgment to a Defendant.

Federal Rule of Civil Procedure Rule 56(c) entitles a party to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A defendant is entitled to summary judgment if the defendant establishes that the plaintiff, as a matter of law, cannot establish at least one essential element of the claims in his complaint on which he bears the burden of proof, or where there is a failure of proof concerning an essential element of his case.  See Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 702 (4th Cir. 2001); Rutecki v. CSX Hotels, Inc., 290 Fed. Appx. 537, 539 (4th Cir. 2008).  See also Kitchen v. Summers Continuous Care Center, 552 F. Supp. 2d 589, 592 (S.D. W. Va. 2008), granting summary judgment to the defendant employer in an ADA case and stating (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)): "Importantly, Rule 56(c) mandates entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  And where there is such a failure of proof concerning an essential element of the nonmovant's case (here, the Plaintiff's) all other facts are necessarily rendered immaterial.  Malone v. Mr. Ford, 2007 U.S. Dist. LEXIS 97387 at *5 (E.D. Va. 2007), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**B.**     **The Applicable Law Concerning Plaintiff's Claims.**

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to … the hiring … of employees … and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). In order to establish a *prima facie* case of wrongful termination under the ADA, Mr. Halkett must show: (1) he was a "qualified individual with a disability;" (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raised a reasonable inference of unlawful discrimination. Rohan v. Networks Presentations LLC, 375 F.3d 266, 272 n.9 (4th Cir. 2004). To establish that he is qualified, Mr. Halkett must show that he is "able to meet all of a program's requirements in spite of his handicap." Thornton v. Gonzalez, 2007 U.S. Dist. LEXIS 98039, at *9 (E.D. Va. 2007). However, if he is able to perform the essential functions of the employment position either with or without a reasonable accommodation, he is deemed qualified. Id.

To establish a *prima facie* case for failure to accommodate, "a plaintiff must establish: (1) that [he] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [his] disability; (3) that with reasonable accommodation [he] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Blanding v. Hayden, 2008 U.S. Dist. LEXIS 88404, at *16 (E.D. Va. 2008). When an employee needs an accommodation, he and the employer are required to engage in what is often referred to as the "interactive process." However, "[a]n employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." Gonzalez, supra, at *13. Further, if there is a possible accommodation that might work, the employee must bring that particular accommodation to the employer's

9

attention. If he does not, he "may be found to have obstructed the process." Gonzalez, supra, at *14.

At all times, "[t]he Plaintiff has the burden of showing that he can perform the essential functions of his job with reasonable accommodation." Nance v. Quickrete Co., 2007 U.S. Dist. LEXIS 40872, at *13 (W.D. Va. 2007). See also Abella v. P.R. Tel. Co., 470 F. Supp. 2d 86, 99 (D.P.R. 2007) (holding it to be plaintiff's burden to prove that, at the time the accommodation was requested, plaintiff was capable of performing the essential functions of the job). Finally, in determining what functions are essential to the job, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. §12111(b).

**C.    Summary Judgment is Appropriate on Mr. Halkett's Claim for Wrongful Termination Because, as a Matter of Law, He Was Not a Qualified Person With a Disability Because He Could Not Perform the Essential Functions of the Electrician's Job He Was Hired to Perform, Either With or Without a Reasonable Accommodation.**

**1.    Bending Conduit, Bending, Stooping and Lifting Awkward Objects Weighing Up to 50 Pounds Were Essential Functions of the Job at Worch Electric.**

The job for which Worch Electric hired Mr. Halkett was for an 'A' Journeyman electrician to work on the Project, for approximately three (3) months. Since this was a new construction project at a government facility, the primary electrical job was to run and bend conduit (for electrical and communications systems), including three-quarter inch (3/4") diameter conduit, and an essential part of Mr. Halkett's job duties at the Project included the bending of that three-quarter inch (3/4") diameter conduit. Worch Aff., ¶5 (Exhibit "A" hereto). Additionally, the job Worch Electric hired Mr. Halkett to perform also required the electrician to lift and install overhead 2-x-4 light fixtures such as those described in Exhibits "B" and "C" to

the Worch Aff., (Exhibit "A" hereto). This particular job also required the electrician to bend and stoop as well. Dawson Aff., ¶7 (Exhibit "B" hereto).

These job requirements were determined in part by the Government's specifications. Most if not all Government work is specified to be run with conduit instead of metal clad cable. Metal clad cable is flexible metal conduit with a wire bundle packaged inside. However, Government projects typically require conduit, because conduit is an open raceway that facilitates ease in maintenance and in future expansion. In fact, the use of metal clad cable is prohibited for some Government jobs, and was prohibited from use on the Project, where Mr. Halkett was to be working as an electrician. Worch Aff., ¶¶ 6-9 (Exhibit "A" hereto).

On new construction jobs such as the Project, the conduit is installed as the walls and floors are being installed, thus the requirement for bending and stooping. This part of the work must be done prior to any wire being pulled and installation of devices, fixtures, etc. On this type of job, conduit installation typically accounts for approximately fifty percent (50%) of the electrical portion of a project, if not more. Worch Aff., ¶¶ 10-11 (Exhibit "A" hereto).

### 2. Mr. Halkett Could Not Bend Conduit, Bend, Stoop, or Lift Awkward Objects Weighing Up to 50 Pounds.

At the time he was to perform his electrician's job for Worch Electric, Mr. Halkett had numerous injuries to his right shoulder, torn rotator cuff; right bicep tendon rupture; locking of fingers on left hand; left wrist fracture; pain and clicking in left elbow, left knee; and degenerative disc disease in back. Complaint ¶8 (Exhibit "C" hereto). Prior to commencing the work for Worch Electric, Mr. Halkett could only stand for one hour or so, then had to sit, walk or lean for awhile; bending and stooping were difficult; kneeling was difficult and could be done only for short periods of time; walking was challenging; and those "disabilities" made it difficult

for him to work, and he was unable and/or had difficulty in bending conduit while at work.
Complaint ¶¶ 8, 10 (Exhibit "C" hereto).

Moreover, Mr. Halkett testified under oath that he: (1) could not do much overhead work
(Halkett Dep., pp. 61-62) (Exhibit "D" hereto); (2) could not lift items above his head (i.e., to
work above his head in the ceiling) (Halkett Dep., pp. 61-63 and 68-70) (Exhibit "D" hereto); (3)
he could not lift fifty (50) pounds (Halkett Dep., p. 76) (Exhibit "D" hereto); (4) he could not lift
items that weigh thirty (30) pounds (such as a 2-x-4 light fixture) if they are of an awkward
shape (Halkett Dep., p. 70) (Exhibit "D" hereto), Worch Aff., ¶¶ 13 and 15 (Exhibit "A" hereto);
(5) he had difficulty working in confined spaces (Halkett Dep., p. 41) (Exhibit "D" hereto); and
(6) he was limited by the amount of pressure that he can put on his shoulder. Id. at pp. 74-76 and
78. In fact, Mr. Halkett admitted that when he went on a jobsite, he never knew what he would
be able to do at any given time, and that he had to pick and choose the chores based upon the
weight of the construction materials presented, awkwardness of the construction materials
presented, length of time the job presented required him to bend, stand, stoop etc., and other
general working conditions. Halkett Dep., pp. 73-76 (Exhibit "D" hereto).

> **3.** **Accordingly, It is Undisputed, and Indeed From Mr. Halkett's Own Allegations and Testimony, That His Physical Limitations Prevented Him From Performing the Essential Functions of His Job at Worch Electric, Either With or Without Reasonable Accommodation, Therefore Rendering Him Not Qualified Under the ADA, As a Matter of Law, So That Worch Electric Is Entitled to Summary Judgment.**

It is undisputed that bending conduit was an essential function of Mr. Halkett's job for
Worch Electric as an electrician at the Project. But Mr. Halkett could not bend conduit, on the
undisputed facts, including on his own allegations and sworn testimony. Bending conduit,
however, was only one of the essential functions of the job for which Mr. Halkett was hired but

which he simply could not do, either with or without reasonable accommodation, on the undisputed facts. Another essential function was lifting objects weighing more than fifty (50) pounds, which again, by Mr. Halkett's own admission, he could not do (i.e., the 2-x-4 light fixtures). The job also required bending and stooping, but, again, Mr. Halkett admitted that he could not do that, or had difficulty doing that. Accordingly, on the undisputed facts, including Mr. Halkett's own allegations and testimony, he was simply not able to perform certain essential functions *at all* – meaning that he could not do them either with or without a reasonable accommodation. Hence, he was not qualified to perform the job for which he was hired and therefore does not meet the ADA's first requirement – that he be qualified to perform all of the essential functions of the position for which he was hired, either with or without a reasonable accommodation.

The law is clear that in order to be a qualified individual under the ADA, one must be able to perform all essential functions of the job. Quattlebaum v. Earl Indus., 2005 U.S. Dist. LEXIS 32419 at *21 (E.D. Va. 2005) (holding ability to perform all essential job functions to be one factor in determining if individual is qualified). In Allen v. Georgia Power Co., 980 F. Supp. 470, 473 (N.D. Ga. 1997), an electrician with a back injury alleged he was discharged in violation of the ADA, because his employer failed to reasonably accommodate his disability. The Court granted summary judgment for the employer, stating that the ability to perform some of the tasks required by the electrician position does not translate into the ability to perform all essential functions of the electrician position. Id. at 477. As such, a plaintiff who can perform some, but not all, essential job functions is not qualified under the ADA. Accordingly, because it is undisputed that Mr. Halkett could not perform all essential functions of the job at Worch Electric, he was not a qualified individual as defined by the ADA, and summary judgment in

favor of Worch Electric is appropriate.  See e.g., Thornton, supra, 2007 U.S. Dist. LEXIS 98039, at \*9 (E.D. Va. 2007); and Abella, supra, 470 F. Supp. 2d 86, 99 (D.P.R. 2007); Isley v. Southern Graphic Systems, Inc., 2008 U.S. Dist. LEXIS 3601, at \*17 (E.D. Va. 2008) (granting summary judgment to defendant employer in an ADA case, where plaintiff did not show that he was capable of performing all of the duties of his job with the defendant, and further holding that "an employer is not required to allocate an essential function of a disabled employee's job to another employee in order to accommodate that disability" and that "an employee is not required to force another employee to leave his or her position to accommodate a disabled employee."

> **D.    On the Undisputed Material Facts, Mr. Halkett Never Engaged Worch Electric in the Interactive Process and Failed to Request Reasonable Accommodations from Worch Electric as Required by the ADA, so That Worch Electric is Entitled to Summary Judgment Dismissing His Complaint, on This Alternative Ground as Well.**

On the first day that Mr. Halkett worked for Worch Electric, he stated that he was installing a type of light fixture that he was able to perform.  Halkett Dep., pp. 103-104 (Exhibit "D" hereto").  On the second day, when he was assigned to bend conduit he told the foreman, Mr. Dawson, that he was not able to bend conduit, and asked if he could do what he was doing the prior day.  Mr. Halkett testified that Mr. Dawson stated that "I've got somebody else to do where you left off" (Halkett Dep., pp. 103-104) (Exhibit "D" hereto).  Mr. Halkett testified that he could have bent conduit if he had another electrician bending the conduit for him, i.e., asking Worch Electric to assign two to perform the job of one.  However, Mr. Halkett never asked Mr. Dawson for a "tool partner," he simply accepted Mr. Dawson's statement that bending conduit was all he had for him to do.  Halkett Dep., pp. 112-113 (Exhibit "D" hereto).  More importantly, there is no evidence that Mr. Halkett ever told Mr. Dawson that he could bend the conduit if he had an electric conduit bending machine (as opposed to using a hand operated bender).  Instead,

the undisputed fact is he simply told Mr. Dawson that he could not bend the conduit. Dawson Aff., ¶¶ 17-18 (Exhibit "B" hereto). Mr. Halkett did testify that he had asked for an electric conduit bending machine at other jobs, but in listing the jobs where he had requested such a machine, he never once stated that he had asked for one at Worch Electric. Halkett Dep., at pp. 53-56 (Exhibit "D" hereto). The practice in the trade was to use a hand powered bender for conduit one inch (1") diameter or less. Dawson Aff., at ¶¶ 18-19 (Exhibit "B" hereto). It would never occur to an electrician in the trade to use an electric machine to bend three quarter inch (3/4") diameter conduit unless someone specifically requested it. Id. at ¶20. Electrically powered machines to bend conduit are brought out typically only for one and one-half inches (1-1/2") diameter and above. Id. at 21.

In this instance, the principal job function on the days Mr. Halkett was employed was the running and bending of conduit. Dawson Aff., at Exhibit "A" (Exhibit "B" hereto) (showing conduit work was part of the job on the days before and after Mr. Halkett quit). Providing a reasonable accommodation does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other workers' jobs more onerous. Abella v. P.R. Tel. Co., 470 F. Supp. 2d 86, 100 (D.P.R. 2007). In this instance, it was not reasonable, as a matter of law, for Worch Electric to have to pay two "A" Journeymen to do the job of one, nor to reallocate the work so that Mr. Halkett could do only the "easy" jobs. In particular it was not reasonable when Mr. Halkett knew that there was another possible accommodation that he simply declined to ask about. Instead, the undisputed facts show that Mr. Halkett simply did not want to bend conduit, the job at hand. And there is no evidence that he ever initiated the interactive process with Worch Electric regarding the bending of conduit and specifically never asked for an electric machine to bend the

three quarter inch (3/4") diameter conduit – which he knew would enable him to perform the essential job function his employer was requesting him to perform.

As a matter of law, it was Mr. Halkett's responsibility under the ADA to provide Worch Electric with the information that if he were provided with an electric machine to bend conduit, he could then perform the essential job function being requested. But Mr. Halkett did not provide that information to Worch Electric. Thus, Mr. Halkett actively obstructed the interactive process and is not entitled to recover under the ADA, as a matter of law. See Thornton, supra, 2007 U.S. Dist. LEXIS 98039, at *14 (E.D. Va. Aug. 27, 2007) ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process.").

Accordingly, because the undisputed facts show that Mr. Halkett never engaged in an interactive process regarding a reasonable accommodation regarding bending conduit, he is not entitled to recover under the ADA, as a matter of law, and Worch Electric is entitled to summary judgment on this alternative ground.

## V.    CONCLUSION

On the undisputed material facts, including Plaintiff's own admissions, Plaintiff, as a matter of law, cannot establish an essential element of his claims here under the ADA, namely that he was capable of performing the essential functions of his job with Defendant, with or without reasonable accommodation. Nor is there any evidence that Plaintiff sought a reasonable accommodation that would have allowed him to do that job. Under those circumstances, and on well-established authority directly on point, including decisions of this Court, Defendant is entitled to summary judgment in its favor. For those reasons, and for the other reasons set forth

16

above, it is respectfully submitted that the Court should grant Defendant Worch Electric, Inc.'s motion for Summary Judgment, dismiss the Complaint, with prejudice, and award Worch Electric, Inc. such other and further relief as may be just and proper.

Respectfully submitted,

**WORCH ELECTRIC, INC.**

By:     _____ /s/ _____

Karen S. Elliott, Esq.
Virginia Bar No.: 26393
Thomas C. Junker, Esq.
Virginia Bar No.: 29928
Attorneys for:  Worch Electric, Inc.
GREGORY KAPLAN PLC
7 East Second Street
Richmond, Virginia 23224
T: (804) 916-9071
F: (804) 916-9171
E: kelliott@gregkaplaw.com
T: (804) 525-1897
F: (804) 916-9138
E: tjunker@gregkaplaw.com
***Counsel for Defendant Worch Electric, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of January 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Martin P. Hogan, Esq.
Attorney at Law
Attorney for: Theodore Halkett
THE LAW OFFICES OF MARTIN P. HOGAN
Evening Star Building
1101 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004
T: (202) 756-1965
F: (202) 56-7323
E: mphoganlaw@msn.com
*Counsel for Plaintiff Theodore Halkett*

                                      /s/
                                        Karen S. Elliott, Esq.
                                        Virginia Bar No.: 26393
                                        Thomas C. Junker, Esq.
                                        Virginia Bar No.: 29928
                                        Attorneys for:  Worch Electric, Inc.
                                        GREGORY KAPLAN, PLC
                                        7 East Second Street
                                        P.O. Box 2470
                                        Richmond, VA 23218-2470
                                        T:  804-916-9071
                                        F:  804-916-9171
                                        E:  kelliott@gregkaplaw.com
                                        T:  804-525-1897
                                        F:  804-916-9138
                                        E:  tjunker@gregkaplaw.com
                                        *Counsel for Defendant Worch Electric, Inc.*

KSE/Worch/Pleadings/01-27-09-BriefSupMotionSJ

18